## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE DOLAN COMPANY, *et al.*,[1] | ) | Case No. 14-10614 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 22** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) UTILIZE CASH COLLATERAL, (C) GRANT PRIMING LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDERS, AND (D) PROVIDE ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (II) GRANTING RELATED RELIEF

Upon the motion dated March 23, 2014 [Docket No. 22] (the "Motion")[2] of The Dolan Company and its affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor" and, collectively, the "Debtors") pursuant to sections 105, 361, 362, 363(e), 364(c)(1), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for entry of a final order:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: The Dolan Company (4527); American Processing Company, LLC (3395); Arizona News Service, LLC (0969); assure360, LLC (8926); Counsel Press, LLC (0509); Daily Journal of Commerce, Inc. (1624); Daily Reporter Publishing Company (9860); DataStream Content Solutions LLC (6276); Dolan APC LLC (3828); Dolan Media Holding Company (0186); Dolan Publishing Company (3784); Dolan Publishing Finance Company (5133); Federal News Service LLC (5309); Finance and Commerce, Inc. (2942); Idaho Business Review, LLC (6843); Lawyer's Weekly, LLC (6760); Legislative Information Services of America, LLC (4027); Long Island Business News, LLC (4338); Missouri Lawyers Media, LLC (8890); National Default Exchange Holdings, LLC (1918); New Orleans Publishing Group, L.L.C. (2405); NOPG, L.L.C. (9511); The Daily Record Company LLC (7310); and The Journal Record Publishing Co., LLC (5769). The location of the Debtors' service address is: 222 South Ninth Street, Suite 2300, Minneapolis, Minnesota 55402.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(a)     authorizing each Debtor to obtain postpetition financing, consisting of a secured, priming, superpriority, revolving credit facility (the "DIP Facility") made available to the Debtors in an aggregate principal amount of $10 million, subject to the terms and conditions hereof, with Bayside Capital, Inc. ("Bayside"), as administrative agent (in such capacity, the "DIP Agent") for and on behalf of itself and a syndicate of other financial institutions (collectively with the DIP Agent, the "DIP Lenders"), which syndicate includes one or more funds managed or advised by Bayside Finance, LLC, Bank of America, N.A., and Ellis Lake Master Fund, L.P. and each of their designees;

(b)     authorizing each Debtor to execute, deliver, and perform under final documentation consistent with the terms of the form of credit agreement attached to the Motion as Exhibit B (as amended, supplemented, or modified from time to time, including pursuant to this Final Order, the "DIP Credit Agreement"), which shall be in form and substance acceptable to the DIP Agent, the DIP Lenders, the Debtors, and the Required Lenders (as defined in the Debtors' plan of reorganization filed contemporaneously with the Motion), and to perform such other and further acts as may be necessary or desirable in connection with the DIP Credit Agreement and all such instruments or documents (including any security agreements, intellectual property security agreements, deposit account control agreements, and notes) as may be executed and delivered in connection therewith or which relate thereto (collectively with the DIP Credit Agreement, the "DIP Documents");

(c)     authorizing the Debtors to use any Cash Collateral (as defined below) in which the Prepetition Secured Parties (as defined below) may have an interest, subject to and in accordance with the terms and conditions of this Final Order and the DIP Documents;

(d)     granting the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected priming security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the limitations and priorities set forth in paragraph 11 below;

(e)     granting the DIP Agent and the DIP Lenders allowed superpriority administrative expense claims in each of the Debtors' Chapter 11 Cases (as defined below) and any Successor Cases (as defined below) for all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents (collectively, the "DIP Obligations"), subject to the priorities set forth in paragraph 7 below;

(f)     granting adequate protection to the Prepetition Secured Parties to the extent of any diminution in value of their interests in the Collateral (as defined in the Prepetition Credit Agreement), whose liens and security interests are being primed by the DIP Facility;

(g)     authorizing The Dolan Company to, subject to the DIP Documents and the Approved Budget (as defined in the DIP Credit Agreement) annexed hereto as Schedule 1, to use a portion of the proceeds of the DIP Facility to fund DiscoverReady (as defined below);

(h)     at an interim hearing before the Bankruptcy Court pursuant to Bankruptcy Rule 4001 (the "Interim Hearing") on the Motion before the Bankruptcy Court, entry of the Interim Order, among other things, (i) authorizing each Debtor to execute, deliver, and perform under the DIP Documents, subject to any limitations under the Interim Order; (ii) authorizing each Debtor, on an interim basis, to borrow up to an aggregate principal amount not to exceed $4.5 million, subject to any limitations on borrowings under the Interim Order, the DIP Documents, and the Approved Budget (including any permitted variances), (iii) authorizing the

Debtors' use of Cash Collateral, (iv) authorizing the Debtors to grant priming liens and superpriority claims to the DIP Lenders; and (v) authorizing the Debtors to provide the Prepetition Secured Parties with the adequate protection set forth herein; and

      (i)     seeking that this Court schedule a final hearing (the "Final Hearing") to be held within thirty (30) days of the Petition Date (as defined below) to consider entry of a final order (the "Final Order") authorizing the balance of the DIP Facility under the DIP Documents on a final basis, subject to the terms of the Final Order and the DIP Documents.

This Court having considered the Motion, the exhibits and schedules attached thereto, the *Declaration of Kevin Nystrom in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), and the evidence submitted or proffered and the arguments of counsel made at the Interim Hearing and the Final Hearing; and the Motion having been served by the Debtors on the thirty (30) largest (on a consolidated basis) unsecured creditors of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, discoverReady LLC ("DiscoverReady"), DR LenderCo LLC, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Internal Revenue Service, the Securities and Exchange Commission, and any party that has requested notice pursuant to Bankruptcy Rule 2002 in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Rules; and this Court having found that, under the circumstances, adequate notice of the Interim Hearing and Final Hearing has been provided in accordance with Bankruptcy Rules 2002, 4001(c) and (d), and 9014; and the Interim Hearing and Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections to the relief requested in the Motion and to the entry of the Interim Order, this Final Order, and the DIP Documents having been withdrawn, resolved, or overruled by this Court; and it appearing to this Court that granting the relief requested is fair

and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1.    ***Disposition***.  The Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objection to the Motion with respect to the entry of this Final Order that has not been withdrawn, waived, or settled, and all reservations of rights included therein, is hereby denied and overruled.  This Final Order shall become effective immediately upon entry.

2.    ***Jurisdiction***.    This Court has core jurisdiction over the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on March 23, 2014 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 361, 362, 363 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and the Local Rules.

3.    ***Notice***.    The notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing, and the Final Hearing complies with Bankruptcy Rules 2002 and 4001(b), (c), and (d) and the Local Rules.

4.    ***Debtors' Stipulations***.    Subject to paragraph 21 of this Final Order, the Debtors, on behalf of and for themselves and their estates admit, stipulate, and agree (collectively, paragraphs 4(a) through 4(g) below are referred to herein as the "Debtors' Stipulations") that:

(a)      Pursuant to that certain Third Amended and Restated Credit Agreement dated as of December 6, 2010, as amended by (i) the Omnibus Reaffirmation and Amendment Agreement dated as of January 31, 2011, (ii) the First Amendment to Third Amended and Restated Credit Agreement dated as of September 30, 2011, (iii) the Second Amendment to Third Amended and Restated Credit Agreement dated as of March 6, 2012, (iv) the Third Amendment to Third Amended and Restated Credit Agreement dated as of October 5, 2012, (v) the Fourth Amendment to Third Amended and Restated Credit Agreement dated as of January 22, 2013, (vi) the Waiver and Fifth Amendment to Third Amended and Restated Credit Agreement dated as of July 8, 2013, (vii) the Consent, Waiver and Sixth Amendment to Third Amended and Restated Credit Agreement dated as of October 31, 2013, (viii) the Limited Waiver, Consent and Seventh Amendment to Third Amended and Restated Credit Agreement dated as of January 7, 2014, (ix) the Limited Waiver, Consent and Eighth Amendment to Third Amended and Restated Credit Agreement dated as of February 13, 2014, (x) the Ninth Amendment to Third Amended and Restated Credit Agreement dated as of February 20, 2014, (xi) the Tenth Amendment to Third Amended and Restated Credit Agreement dated as of February 28, 2014, and (xii) the Eleventh Amendment to Third Amended and Restated Credit Agreement dated as of March 20, 2014 (the "Prepetition Credit Agreement") by and among The Dolan Company, as a Borrower and as the Borrowers' Agent, the subsidiaries of The Dolan Company from time to time, the lenders from time to time party thereto (collectively, the "Prepetition Lenders"), and Bayside (as successor in interest to U.S. Bank National Association), as Administrative Agent (in such capacity, including any successor thereto, the "Prepetition Agent" and together with the Prepetition Lenders, the "Prepetition Secured Parties"), and each Loan Document (as defined therein) executed in connection with the Prepetition Credit Agreement (collectively with the

6

Prepetition Credit Agreement, the "Prepetition Loan Documents"), the Prepetition Secured Parties provided a revolving credit facility and a term loan credit facility to and for the benefit of the Debtors and DiscoverReady.

(b)      As of the Petition Date, the Debtors party to or otherwise obligated under the Prepetition Loan Documents, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition Lenders under the Prepetition Loan Documents in the aggregate principal amount of not less than $150,273,111.79, plus all accrued and unpaid interest, plus expenses (including any attorneys', accountants', appraisers', and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents), charges, Obligations (as defined in the Prepetition Credit Agreement), and all other obligations incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Obligations").

(c)      To secure the Prepetition Obligations, the Borrowers (as defined in the Prepetition Credit Agreement) granted to the Prepetition Agent for the benefit of itself and the Prepetition Lenders first priority security interests and liens (collectively, the "Prepetition Liens") on the Collateral (as defined in the Prepetition Credit Agreement).

(d)      The Prepetition Obligations constitute the legal, valid, and binding obligations of the respective Borrowers named in the Prepetition Loan Documents, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(e)      No portion of the Prepetition Obligations or any payment made to the Prepetition Agent or the Prepetition Lenders or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, recharacterization,

recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.

(f)     The Borrowers (as defined in the Prepetition Credit Agreement) hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against the Prepetition Agent or any of the Prepetition Lenders.  Each Debtor hereby forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the Prepetition Agent and each of the Prepetition Lenders, whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law; *provided, however*, that nothing herein or in any of the DIP Documents shall operate as a release or waiver of any claims or causes of action held by any party (including, without limitation, any of the Debtors) against any Debtor, any "affiliate" of any Debtor (as defined in the Bankruptcy Code) or any officer, director, or direct or indirect shareholder (or affiliate thereof) of any Debtor.

(g)     The Prepetition Liens granted to the Prepetition Agent in the Collateral (as defined in the Prepetition Credit Agreement) pursuant to and in connection with the Prepetition Loan Documents (collectively, the "<u>Prepetition Collateral</u>") including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Borrowers (as defined in the Prepetition Credit Agreement) in favor of the Prepetition Agent, for the Prepetition Agent's benefit and for the benefit of the Prepetition Lenders, (i) are valid, binding, perfected, and enforceable liens and security interests in the Collateral (as defined therein) described in the Prepetition Loan

Documents and to the extent required therein, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) are subject and/or subordinate only to (x) the DIP Liens (as defined below), (y) the Carve-Out (as defined below) to which the DIP Liens are subject, and (z) valid, perfected, and unavoidable liens and security interests permitted under the Prepetition Loan Documents, but only to the extent that such liens and security interests are permitted by the Prepetition Loan Documents to be senior to or *pari passu* with the applicable Prepetition Liens, and (iv) constitute the legal, valid, and binding obligation of the Borrowers (as defined in the Prepetition Credit Agreement), enforceable in accordance with the terms of the applicable Prepetition Loan Documents.

5.    ***Findings Regarding the DIP Facility.***

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money, and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate

KE 31061326

unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtors granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens, and the DIP Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d)     The priming of the Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code, as further described below, enabled the Debtors to obtain the DIP Facility and will enable the Debtors to continue to operate their businesses for the benefit of their estates and creditors. The Prepetition Agent and Prepetition Lenders consent to such priming liens only on the terms set forth herein and in the DIP Documents and are entitled to receive adequate protection as set forth in this Final Order, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Prepetition Collateral resulting from, among other things, the subordination to the Carve-Out and the DIP Liens, the Debtors' use, sale, or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

(e)     In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their DIP Liens and Superpriority Claims to the Carve-Out and to the current payment of administrative expenses of the Debtors' estates in accordance with the Approved Budget and Budget Compliance Covenant (as defined below and subject to section 6.25 of the DIP Credit Agreement) and (ii) the Prepetition Agent's and Prepetition Lenders' agreement to subordinate

KE 31061326

their liens and claims to the Carve-Out, DIP Liens, and DIP Superpriority Claims, each of the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders are entitled to a waiver of (x) any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (y) the provisions of section 506(c) of the Bankruptcy Code.

(f)    [Reserved.]

(g)    The DIP Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, and the DIP Lenders, and all of the DIP Obligations shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(h)    Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Final Order and the DIP Documents is in the best interests of the Debtors and their estates.

6.    ***Authorization of the DIP Facility and the DIP Credit Agreement.***

(a)    The Debtors are hereby authorized to use Cash Collateral and execute, enter into, and perform their respective obligations under the DIP Documents, and the DIP Documents are hereby approved, as modified herein. The DIP Documents and this Final Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP Lenders; *provided,* that in the event of a conflict between the Final Order and the DIP Documents, the Final Order shall control.

KE 31061326

(b)      The Debtors are hereby authorized, on a final basis, to borrow money pursuant to the DIP Documents up to an aggregate principal or face amount of $10 million (the "Final DIP Financing").

(c)      As a condition to entry into the DIP Documents and the extension of credit under the DIP Facility, the DIP Agent and DIP Lenders required, and the Debtors agreed, that the proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents including any covenant contained therein (the "Budget Compliance Covenant") pertaining to compliance with the Approved Budget (including all permitted variances and section 6.25 of the DIP Credit Agreement).  Without limiting the generality of the foregoing, the Final DIP Financing may be used, subject to the terms of this Final Order and the DIP Documents (and subject to the Approved Budget, including all permitted variances and section 6.25 of the DIP Credit Agreement) to, among other things, (i) provide working capital for the Debtors, (ii) fund DiscoverReady in accordance with the Approved Budget, and (iii) pay interest, fees, and expenses in accordance with this Final Order and the DIP Documents (including, for the avoidance of doubt, the fees and expenses of the DIP Lenders' professionals, whether incurred pre- or postpetition).  Subject only to paragraph 20 of this Final Order, the Debtors shall not use the proceeds of the DIP Facility or any proceeds of the DIP Collateral to affirmatively commence or support, or to pay any professional fees incurred in connection with, any adversary proceeding, motion, or other action that seeks to challenge, contest, or otherwise seek to impair or object to the validity, extent, enforceability, or priority of the liens, claims, or rights in favor of the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender.

KE 31061326

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, financing statements, and all DIP Documents), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(i)     the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreements, and any mortgages contemplated thereby;

(ii)     the execution, delivery, and performance of one or more immaterial amendments, waivers, consents, or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP Facility among the DIP Lenders, in each case, in such form as the Debtors, the DIP Agent, and the Required Lenders (as defined in the DIP Credit Agreement) may agree; *provided*, that no further approval of the Bankruptcy Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Documents (or any non-material fees paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the commitments or the rate of interest payable thereunder; *provided*, *however*, that the Debtors shall provide notice of any material modification or amendment to the DIP Credit Agreement to counsel to any official committee

13

appointed in the Chapter 11 Cases (the "Committee") (if any), counsel to the Prepetition Agent, and the U.S. Trustee; and

(iii)    the performance of all other acts required under or in connection with the DIP Documents.

(e)    Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code (any such case, a "Successor Case"), or after the dismissal of any Chapter 11 Case.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Documents, or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim, except as expressly set forth in the DIP Documents.

(f)    If the Debtors fail to timely execute and deliver the DIP Credit Agreement and the other DIP Documents as required by the DIP Credit Agreement, and the DIP Agent or DIP Lenders have already provided funds under the DIP Facility, then all such funds shall become immediately due and payable to the DIP Agent and/or DIP Lenders, in which event the DIP Lenders shall have the rights provided for in paragraph 12(c) of this Final Order.

14

7.    *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, the Debtors hereby grant the DIP Agent, for the benefit of itself and the DIP Lenders, an allowed superpriority administrative expense claim in each of the Debtors' Chapter 11 Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations, which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, without limitation, the proceeds of all Avoidance Actions (as defined below).  The DIP Superpriority Claims shall be subordinate only to payment of the Carve-Out, and shall (a) otherwise have priority over all administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.    *Carve-Out.*

(a)    Carve-Out.  As used in this Final Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at

the statutory rate (without regard to the notice set forth in (iii) below); (ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors or the Committee (if any) pursuant to section 327, 328, or 363 of the Bankruptcy Code and (the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice (the "Pre-Trigger Notice Professional Fees"); and (iv) Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in preceding clauses (ii) – (iii).  For purposes of this Final Order, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the United States Trustee, and lead counsel to the Committee (if any) which notice may be delivered following the occurrence and during the continuation of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors, the Carve Out Trigger Notice shall (x) (i) be deemed a draw request and notice of borrowing by the Debtors for loans under the DIP Facility in an

amount equal to the then unpaid amounts of the Pre-Trigger Notice Professional Fees, and (ii) also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Pre-Trigger Notice Professional Fees and (y) be deemed a request by the Debtors for loans under the DIP Facility in an amount equal to the Post-Carve Out Trigger Notice Cap; *provided* that nothing contained in this Final Order shall be construed to require the DIP Lenders to make Loans to the Debtors in accordance with the preceding clauses (x)(i) and (y) in an amount that is greater than the difference between the then existing Aggregate Revolving Commitment (or, in the event that the Aggregate Revolving Commitment has been terminated, the Aggregate Revolving Commitment immediately prior to such termination) and the then existing Aggregate Revolving Credit Exposure.[3] The Debtors shall deposit and hold (a) amounts required by the preceding clauses (x)(i) – (ii) in a segregated account in trust to pay such then unpaid Pre-Trigger Notice Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims and (b) amounts required by the preceding clause (y) in a segregated account in trust to pay such Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims. On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding the existence of a default or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for loans under the DIP Facility or the occurrence of the Facility Termination Date, each DIP Lender shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the terms herein and

---

[3] The terms "Aggregate Revolving Commitment" and "Aggregate Revolving Credit Exposure" shall have the meanings ascribed to them in in the DIP Credit Agreement.

KE 31061326

the DIP Facility.  Notwithstanding anything to the contrary in the DIP Documents, the Interim Order, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent, the Prepetition Agent, the DIP Lenders, and the Prepetition Lenders shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents.  Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans or increase or reduce the DIP Obligations, and (ii) the failure of the Carve Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out.

(c)      No Direct Obligation To Pay Professional Fees.  The DIP Agent and DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)      Payment of Professional Fees Prior to the Carve Out Trigger Notice.  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice in respect of any Professional Fees shall not reduce the Carve-Out.

(e)      Payment of Carve-Out On or After Carve Out Trigger Notice.  Any payment or reimbursement made on or after the occurrence of the Carve Out Trigger Notice in respect of any Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar

basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Documents, the Bankruptcy Code, and applicable law.

9.    ***Carve-Out Report***.  The Debtors and their Chief Restructuring Officer (as defined in the DIP Credit Agreement) shall provide to the DIP Agent and the DIP Lenders a written report (the "Carve-Out Report") every two weeks disclosing their then-current estimate of (a) the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Professionals through the date of the Carve-Out Report, and (b) projected fees, costs, and expenses of the Professionals for the 30-day period following the date of such Carve-Out Report, taking into account projected interim payments during such period.  The Carve-Out Report shall not constitute a cap or limitation on the payment of any Professional Fees.

10.    ***Reservation of Rights Regarding Objections to Fees and Expenses***.  Nothing herein shall be construed as consent by the DIP Agent or the DIP Lenders to the allowance of any fees or expenses of the Professionals or shall affect the right of the DIP Agent or the DIP Lenders to object to the allowance and payment of such fees, costs, or expenses, or the right of the DIP Agent, on behalf of itself and the DIP Lenders, to the return of any portion of the Carve-Out that is funded under the DIP Documents with respect to fees and expenses for a Professional that are approved on an interim basis but are later denied on a final basis.

11.    ***DIP Liens***.  As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by any DIP Agent or DIP Lender of or over any DIP Collateral, the following security interests and liens (collectively,

19

the "DIP Liens") are hereby granted by the Debtors to the DIP Agent for its own benefit and the benefit of the DIP Lenders on all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral", but excluding in all events, Excluded Property (as defined in the DIP Documents) and subject to the payment of the Carve-Out:

      (a)    *First Lien on Unencumbered Property.*  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all pre- and postpetition property of the Debtors or their estates, whether existing on the Petition Date or thereafter acquired, that on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including, without limitation, any such unencumbered cash of the Debtors (whether maintained with the Prepetition Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, commercial tort claims, equity interests, and the proceeds of all the foregoing. Unencumbered Property shall also include the proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), whether by judgment, settlement, or otherwise.

      (b)    *Liens Priming Prepetition Liens.*  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtors (including, without limitation, Cash Collateral, inventory, accounts receivable, other rights to

payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to any existing lien presently securing the Prepetition Obligations (including in respect of issued but undrawn letters of credit). The DIP Liens on the Prepetition Collateral securing the Prepetition Obligations shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current or future liens of the Prepetition Secured Parties (including, without limitation, adequate protection liens granted hereunder). The foregoing security interests and liens on the DIP Collateral securing the DIP Facility shall be junior to any valid, perfected, and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Secured Parties may become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all pre- and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 11, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent are junior to such valid, perfected, and unavoidable liens.

KE 31061326

(d)     *Liens Senior to Certain Other Liens*.  The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date (other than valid and unavoidable inchoate liens in existence on the petition date, arising after the Petition date, or to the extent permitted by applicable non-bankruptcy law) including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors to the extent permitted by applicable non-bankruptcy law or (iii) any intercompany or affiliate liens of the Debtors.

(e)     Notwithstanding anything to the contrary herein or in any other DIP Document, the Collateral shall in no event include the Excluded Property (as defined in the DIP Documents).

12.     ***Protection of DIP Lenders' Rights***.

(a)     All DIP Collateral shall be free and clear of all liens, claims, and encumbrances, except for those liens, claims, and encumbrances expressly permitted under the DIP Documents or this Final Order.

(b)     So long as there are any borrowings or other amounts outstanding under the DIP Documents, the Prepetition Agent and Prepetition Lenders shall (i) take no action to foreclose upon or recover in connection with the liens granted pursuant to the Prepetition Loan Documents or this Final Order, or otherwise exercise remedies against any Prepetition Collateral, except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of Prepetition Collateral authorized under the DIP Documents and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien, or

similar instruments, or otherwise take any action to perfect their security interests in the Prepetition Collateral.

(c)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Required Lenders (as defined in the DIP Credit Agreement) or the DIP Agent (with the consent of the Required Lenders) to exercise, upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement), and after providing five days' prior written notice to The Dolan Company (with a copy to counsel to any Committee (if appointed) and to the U.S. Trustee), all rights and remedies under the DIP Documents, including all rights and remedies against the DIP Collateral provided for in any DIP Document (including, without limitation, the right to set off against accounts maintained by the Debtors with the DIP Agent or any DIP Lender or any affiliate thereof) other than employee benefit accounts, tax withholding accounts, or payroll accounts; *provided that* upon the Company's receipt of written notice that an Event of Default has occurred and is continuing, the Company shall have five days to seek an emergency hearing before the Bankruptcy Court for the purpose of determining whether an Event of Default has occurred or is continuing and no action shall be taken by any of the DIP Lenders or the DIP Agent pending such determination by the Bankruptcy Court.

(d)    In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The delay or failure to exercise rights and remedies under the DIP Documents or this Final Order by the DIP Agent or DIP Lenders shall not constitute a waiver of the DIP Agent's or any DIP Lender's rights hereunder, thereunder or

KE 31061326

otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Documents.

13.    ***Limitation on Charging Expenses Against Collateral.***  Subject to the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Agent and DIP Lenders or the Prepetition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders.

14.    ***Cash Collateral.***  To the extent any funds of the Debtors were on deposit with any Prepetition Secured Party as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Prepetition Secured Party immediately prior to the commencement of any of the Chapter 11 Cases (regardless of whether, as of the time of such commencement, such funds had been collected or made available for withdrawal by any Debtor), such funds (the "Deposited Funds") are subject to rights of setoff. By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Prepetition Secured Party, giving rise to a secured claim pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Prepetition Secured Parties are obligated, to the extent provided in the Prepetition Loan Documents, as the case may be, to share the benefit of such liens and setoff rights with the other Prepetition Secured Parties that are party to or are otherwise beneficiaries of such documents.  Pursuant to section 552 of the Bankruptcy Code, any proceeds of the

24

Prepetition Collateral of the Prepetition Secured Parties (including, without limitation, the Deposited Funds or any other funds on deposit at the Prepetition Secured Parties or at any other institution as of the Petition Date) are Cash Collateral of the applicable Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds, all cash proceeds of the Prepetition Collateral of the Prepetition Secured Parties, and all other cash collateral (as defined in the Bankruptcy Code) of the Prepetition Secured Parties constitutes Cash Collateral hereunder.

15.     *Use of Cash Collateral.*  Except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from using the Cash Collateral absent further order of this Court. The Debtors' right to use Cash Collateral, and the Prepetition Secured Parties' consent to use of Cash Collateral, shall terminate automatically on the Facility Termination Date (as defined in the DIP Credit Agreement); *provided that* upon the Debtors' receipt of written notice that an Event of Default has occurred and is continuing, the Debtors shall retain the right to use Cash Collateral in accordance with the terms and conditions of this Final Order until the later of (a) five days after the Debtors' receipt of such written notice or (b) if the Debtors seek an emergency hearing before the Bankruptcy Court in accordance with paragraph 12(c) for the purpose of determining whether an Event of Default has occurred or is continuing, the date of such hearing as set by the Bankruptcy Court, but in no event for more than seven (7) days after the date that the Debtors file their motion seeking such emergency hearing. Notwithstanding the foregoing, the Debtors shall have no right to use the Cash Collateral contained in the "Facility LC Collateral Account" (as defined in the Prepetition Credit Agreement) unless such Cash Collateral has been released to the Debtors.

KE 31061326

16.     *Adequate Protection*.  The Prepetition Agent and the Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral against any Diminution in Value of such interests on account of, among other things, the priming of the Prepetition Agent's and Prepetition Lenders' interests in the Prepetition Collateral in respect of the Carve-Out and the DIP Obligations, the Debtors' use of the Prepetition Collateral (including the Cash Collateral), and the imposition of the automatic stay under section 362 of the Bankruptcy Code.  As adequate protection, the Prepetition Agent and the Prepetition Lenders are hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)     *Adequate Protection Liens*.  The Prepetition Agent, for the benefit of itself and the Prepetition Lenders, is hereby granted, effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, or other agreements, valid, binding, enforceable, and perfected postpetition replacement security interests in and liens upon all DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens and any liens on the DIP Collateral that are senior to, or *pari passu* with, the DIP Liens and (ii) the Carve-Out.  Except as expressly provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to

section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(b)    ***Section 507(b) Claims.***  The Prepetition Agent, for the benefit of itself and the Prepetition Lenders, is hereby granted to the extent provided under section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and Successor Cases (the "Section 507(b) Claims").  The Section 507(b) Claims shall be junior only to the Carve-Out and DIP Superpriority Claims; *provided,* that none of the Prepetition Secured Parties shall receive or retain any payments, property, or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Prepetition Loan Documents unless and until the DIP Obligations have irrevocably been paid in cash in full or as otherwise agreed by the DIP Lenders or as provided in the DIP Documents.

(d)    ***Fees and Expenses.***  The Prepetition Agent and the Prepetition Lenders shall receive from the Debtors current cash payments (the "Adequate Protection Payments") of all fees and expenses (other than interest) payable to the Prepetition Agent or the Prepetition Lenders, as applicable, under the Prepetition Loan Documents, including, but not limited to, the reasonable fees and disbursements of the respective counsel, financial and other consultants for the Prepetition Agent and Prepetition Lenders, as applicable, promptly upon receipt of invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications, including such amounts arising before and after the Petition Date; *provided that* the Prepetition Agent or the Prepetition Lenders, as applicable, must provide copies of such invoices to the U.S. Trustee and the Committee (if any), which

KE 31061326

parties shall have ten days to review and/or object to the payment of such invoices before the Debtors shall make such Adequate Protection Payments.

(e)    *Monitoring of Collateral.*    Subject to the Terms of the DIP Credit Agreement, the Prepetition Agent and Bayside shall be permitted to retain expert consultants and financial advisors at the expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the Debtors' businesses and the value of the DIP Collateral.

(f)    *Financial Reporting.*    The Debtors shall provide the Prepetition Agent and the Prepetition Lenders with financial and other reporting as described in the DIP Documents, and subject to the terms of such DIP Documents, including with respect to any cure period provided for therein.

(g)    *LC Issuer.*    Solely in accordance with the Prepetition Credit Agreement, the "LC Issuer" (as defined in the Prepetition Credit Agreement) may use the Cash Collateral contained in the Facility LC Collateral Account to pay any draws under the Letters of Credit outstanding under the Prepetition Credit Agreement, together with any related fees, costs, and expenses reimbursable in accordance with the terms of the Prepetition Credit Agreement.

17.    *Reservation of Rights of Prepetition Secured Parties.*    Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Bankruptcy Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.    However, the Prepetition Agent and the Prepetition Lenders may request further or different adequate protection, and the Debtors or any other party may contest any such request; *provided*, that any such further or different adequate protection shall at all times be subordinate

KE 31061326

and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this Final Order and the DIP Documents.  Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party, the DIP Agent, or any DIP Lender, including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law.

18.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The Debtors, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder in respect of the Collateral.  Whether or not the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder in respect of the Collateral, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of the Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties, without any further consent of any party, is authorized to take, execute, deliver, and file such instruments (in each case without

29

representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve, and enforce the DIP Liens. The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent all such agreements, financing statements, instruments, and other documents as the DIP Agent and the Prepetition Agent may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens and the Adequate Protection Liens, in each case in accordance with and subject to the terms of the DIP Credit Agreement. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

(c)     Any provision of any lease or other license, contract, or other agreement that requires the consent or approval of one or more landlords or other parties in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Documents or this Final Order.

(d)     Notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default (as defined in the DIP Credit Agreement) has occurred and is continuing, the DIP Agent may enter upon such leased

KE 31061326

premises for the purpose of exercising any right or remedy with respect to the collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; *provided,* that the DIP Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such DIP Agent, calculated on a per diem basis and any such amount paid shall be deemed to be DIP Obligations, as applicable.

19.    ***Preservation of Rights Granted Under this Final Order.***

(a)    Until and unless (i) the DIP Obligations (excluding any contingent obligations), DIP Superpriority Claims, Section 507(b) Claims, and Prepetition Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), (ii) all commitments to extend credit under the DIP Facility have been terminated, and (iii) any asserted or threatened claims, demands, actions, suits, proceedings, investigations, liabilities, fines, costs, penalties, or damages for which any DIP Lender or DIP Agent may be entitled to indemnification by any Debtor pursuant to the indemnification provisions in the DIP Documents has been cash collateralized (clauses (i) through (iii) collectively, "Paid In Full"), the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly, and it shall constitute an Event of Default (as defined in the DIP Credit Agreement) and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seek such consent to:  (x) except as permitted under the DIP Documents and with the prior written consent of the DIP Agent and DIP Lenders (1) any modification, stay, vacatur, or amendment to this Final Order, (2) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any

administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a), or 507(b)) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, Section 507(b) Claims or the Prepetition Obligations, or (3) any other order allowing use of the DIP Collateral; and (b) except as permitted under the DIP Documents or with the prior written consent of the DIP Agent and DIP Lenders, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, the Adequate Protection Liens or Prepetition Liens, respectively.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent and DIP Lenders, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Agent and DIP Lenders.

(b)     If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Superpriority Claims, DIP Liens and Adequate Protection Obligations granted to the DIP Agent and the DIP Lenders and, as applicable, the Prepetition Secured Parties pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations, Adequate Protection Obligations, and Prepetition Obligations shall have been Paid In Full (and that such the DIP Superpriority Claims, DIP Liens, and Adequate Protection Obligations shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such the DIP Superpriority Claims, DIP Liens, and Adequate Protection Obligations.

KE 31061326

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacation shall not affect (i) the validity, priority, or enforceability of (x) any rights or remedies of the DIP Agent, DIP Lenders, and/or Prepetition Secured Parties granted under this Final Order or the DIP Documents, in each instance, granted prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification, or vacation or (y) any DIP Obligations or Adequate Protection Obligations under this Final Order or the DIP Documents, in each instance, incurred prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification, or vacation. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral and any DIP Obligations or Adequate Protection Obligations incurred by the Debtors prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order, and pursuant to the DIP Documents with respect to all uses of Cash Collateral and the incurrence of all DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, all DIP Superpriority Claims, DIP Liens, Adequate Protection Obligations, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11

Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases, or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any Successor Cases, and the DIP Liens, the DIP Superpriority Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, Adequate Protection Obligations, and Prepetition Obligations are Paid In Full.

20.    ***Limitations on the DIP Facility Proceeds, DIP Collateral, Cash Collateral Prepetition Collateral, and Carve-Out***.

(a)    Notwithstanding anything contained herein (except as expressly provided in paragraph 20(b) of this Final Order), no borrowings, proceeds of letters of credit, Cash Collateral, Prepetition Collateral, DIP Collateral, portion of the proceeds of the DIP Facility, or part of the Carve-Out may be used:

(i)    in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (x) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations, the Adequate Protection Obligations or Prepetition Obligations, (y) for monetary, injunctive, or other affirmative relief against the DIP Agent, any DIP Lender, Prepetition Agent, any Prepetition Lender or their respective

34

collateral, or (z) except to contest the occurrence or continuation of any Event of Default as permitted in paragraph 12(c) hereof, preventing, hindering or otherwise delaying the exercise by the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender of any rights and/or remedies under this Final Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Lenders upon any of the DIP Collateral or Prepetition Collateral, as applicable; *provided*, that any fees, costs, and expenses incurred pursuant to this clause (z) solely with respect to contesting the occurrence or continuation of an Event of Default as permitted in paragraph 12(c) shall be payable solely from the Carve-Out;

(ii)　　to make any distribution under a plan of reorganization in any of the Chapter 11 Cases;

(iii)　　to make any payment in settlement of any claim, action, or proceeding, before any court, arbitrator, or other governmental body without the prior written consent required under the DIP Documents;

(iv)　　to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent required under the DIP Documents;

(v)　　except to contest the occurrence or continuation of any Event of Default as permitted in paragraph 12(c) hereof, object to, contest, or interfere with in any way the DIP Agent's or any DIP Lender's enforcement or realization upon any of the DIP Collateral or the Prepetition Agent's or any

35

Prepetition Lender's enforcement or realization upon any of the Prepetition Collateral once an Event of Default has occurred; *provided*, that any fees, costs, and expenses incurred pursuant to this provision (v) solely with respect to contesting the occurrence or continuation of an Event of Default as permitted in paragraph 12(c) shall be payable solely from the Carve-Out;

(vi)    to sell or otherwise dispose of DIP Collateral without the consents required under the DIP Documents;

(vii)    with respect to any insurance proceeds constituting DIP Collateral, without the consent required under the DIP Documents;

(viii)    to incur Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business without the prior consent required under the DIP Documents;

(ix)    to object to or challenge in any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf of the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender;

(x)    to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender;

(xi)    to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, Prepetition Liens, DIP Obligations, or DIP

36

Liens, or any other rights or interests of the Prepetition Agent, any Prepetition Lender, the DIP Agent, or any DIP Lender; or

(xii)   to otherwise prevent, hinder, or otherwise delay the exercise by the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender, of any rights and remedies granted under this Final Order.

(b)   Notwithstanding the foregoing, an aggregate amount not to exceed $50,000 of the DIP Facility, DIP Collateral, Cash Collateral, and Carve-Out may be used by the Committee (if any) to investigate the Prepetition Obligations and Prepetition Liens within the Challenge Period (as defined below).

21.   ***Effect of Stipulations on Third Parties.***

(a)   Subject to paragraph 21(b) hereof, each stipulation, admission, and agreement contained in this Final Order, including, without limitation, the Debtors' Stipulations shall be binding upon the Debtors, their estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the date of the Petition Date.

(b)   Nothing in this Final Order or the DIP Documents shall prejudice the rights of the Committee (if any) or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this paragraph 21, to assert claims against the Prepetition Agent or Prepetition Lenders, on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Agent or any Prepetition Lender, (ii) the validity, allowability, priority, or amount of

37

the Prepetition Obligations, or (iii) any liability of the Prepetition Agent and/or any Prepetition Lender with respect to anything arising from the Prepetition Loan Documents. The Committee (if any) or any other party in interest must, after obtaining standing approved by the Bankruptcy Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Prepetition Agent or any Prepetition Lender (each, a "Challenge") no later than (a) with respect to the Committee, if any, the date that is sixty (60) days after the Committee's formation, (b) with respect to any chapter 11 trustee appointed in the Debtors' Chapter 11 Cases, or any chapter 7 trustee appointed in any Successor Case, no later than the date that is sixty (60) days after the appointment of such trustee, or (c) with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of this Final Order (collectively, the "Challenge Period"). The Challenge Period may only be extended with the written consent of the Prepetition Agent or the applicable Prepetition Lender prior to the expiration of the Challenge Period. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including the Committee (if any) who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Committee (if any), any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Agent's and each Prepetition Lender's claims, liens, and

interests shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (3) any and all claims or causes of action against the Prepetition Agent and/or any Prepetition Lender, relating in any way to the Prepetition Credit Agreement, Prepetition Obligations, and Prepetition Liens shall be released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases.

(c)    Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including a Committee (if any) standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenge with respect to the Prepetition Loan Documents or the Prepetition Obligations.

22.    *Collateral Agent.*

(a)    To the extent that the Prepetition Agent is (i) the secured party under any account control agreements in connection with the Prepetition Loan Documents, (ii) listed as loss payee under the Debtors' insurance policies in connection with the Prepetition Loan Documents, or (iii) the secured party under any Prepetition Loan Document, so shall the DIP Agent (x) be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, (y) have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and (z) act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement, and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition Lenders, to the extent of any outstanding Prepetition Obligations.

KE 31061326

(b)    The Prepetition Agent shall serve as agent for the DIP Agent for purposes of perfecting their respective security interests in and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

23.    *DiscoverReady Guaranty.*  DiscoverReady shall be a non-Debtor guarantor of the Debtors' obligations under the DIP Facility, and as a condition precedent to the making of any loans under the DIP Facility, the DiscoverReady Guaranty (as defined in the DIP Credit Agreement) and the DiscoverReady Collateral Documents (as defined in the DIP Credit Agreement) shall have been executed in accordance with the terms of the DIP Credit Agreement.

24.    *Order Governs.*  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

25.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any Committee (if any) appointed and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns; *provided, however*, that the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders shall have no obligation to

40

permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

26.      ***No Impact on Certain Contracts or Transactions***.   No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560, or 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

27.      ***Exclusions***.   Nothing herein or in any of the DIP Documents shall operate as a release or waiver of, or a limit on expenditures in pursuit of, any claims or causes of action held or assertable by any party (including, without limitation, any of the Debtors or any other party in interest) against any Debtor, any "affiliate" of any Debtor (as defined in the Bankruptcy Code) or any officer, director, or direct or indirect shareholder (or affiliate thereof) of any Debtor.

28.      ***Release***.   Upon the date that the DIP Obligations shall be Paid In Full and prior to the release of the applicable DIP Liens, the Debtors shall execute and deliver to the DIP Agent and DIP Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the DIP Facility.

29.      ***Effectiveness***.   This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.   Notwithstanding the applicability of any Bankruptcy Rule or Federal Rule of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30.      ***Headings***.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

31.      [Reserved.]

41

KE 31061326

32.     [Reserved.]

33.     *Setoff.*  Notwithstanding any other term or provision of this Order, with respect to creditors who, at any time prior to the date of any confirmation of a plan of reorganization in these cases, have asserted rights to setoff or recoupment against property of the Debtors, and who have thereby preserved such rights pursuant to section 553(a) of the Bankruptcy Code, their setoff or recoupment rights are fully preserved, and shall not be diminished or impeded by this Order to the extent provided by section 553 of the Bankruptcy Code.

Dated:  April 17, 2014
Wilmington, Delaware

The Honorable Brendan L. Shannon
United States Bankruptcy Judge

42